INGLE *v.* BATESVILLE GROCERY COMPANY.

Opinion delivered February 22, 1909.

1. INSURANCE—MUTUAL COMPANY—LIABILITY ON BOND.—Under Sand. & H. Dig., § 4133, providing that mutual insurance companies shall give bond "conditioned for the prompt payment of all assessments to the parties or beneficiaries entitled thereto," and that "the makers

of said bond shall be liable thereon for any violations of the conditions thereof, or any loss which may accrue to the policy-holders or beneficiaries of such company," the sureties on such bond are bound merely to see that the insurance company pays over all assessments to the parties or beneficiaries entitled thereto. (Page 382.)

2. SAME—CONCLUSIVENESS OF JUDGMENT AGAINST COMPANY.—A judgment against a mutual insurance company based upon a policy of insurance issued by it is *prima facie* evidence only in a suit upon the bond given by such company as required by Sand. & H. Dig., § 4133. (Page 384.)

Appeal from Sebastian Circuit Court; *Daniel Hon,* Judge; reversed.

*T. W. M. Boone* and *Charles E. Warner,* for appellant.

1. There was no right to recover under the bond sued on until the terms and conditions thereof had been broken by the Insurance Company. Sandels & Hill's Digest, § 4133. Certified copies of the proceedings and judgment of the Marion Circuit Court against the Ozark Insurance Company in an action against it by the appellee, these appellants not being made parties to that suit, were not sufficient to establish the liability of appellants, without further proof that the property had been destroyed by fire and that the assured had kept and performed the covenants and conditions of the policy. That judgment did not conclude the sureties. 34 So. 933; 113 Ia. 137; 64 Pa. St. 246; 47 Ala. 722; 36 Wis. 619; Brandt on Suretyship, § 524; 24 Wend. 35; 29 Ala. 147; 64 Pa. St. 244.

2. Appellants were bound only for the faithful application of premiums and assessments. And the court erred in excluding testimony offered by appellants to show that all assessments had been honestly and faithfully applied on losses as required by law and the terms of the bond.

*Mechem & Mechem* and *Samuel M. Casey,* for appellee.

1. The record from the Marion Circuit Court was introduced as *prima facie* evidence of the damages against which appellants had undertaken by their bond, and was properly admitted. This is not an action on the judgment, but upon the bond given by appellants for the due performance of the insurance company of its policy contract. 10 Metc. 309; 166 U. S. 57; 79 Fed. 420; 70 Ga. 572; 13 Wash. 559; 66 Kan. 50; 60 Atl. 450; 74 Mich.

687; 43 Vt. 98; 55 Minn. 318; 48 Wis. 54; 34 N. Y. 275; 3 Ohio, 487; 45 Mo. 42; 6 So. 517; 40 Pa. St. 178.

2. Appellants were bound for any loss which might accrue to policy holders or beneficiaries; and evidence offered by appellants relative to application of assessments was properly excluded.

*Ashley Cockrill,* for appellee (as *amicus curiae.*)

Quotes Kirby's Digest, § 4348, emphasizes the clause "or any loss which may accrue to the policy holders or beneficiaries of such company," and contends that the bond is in the language of the statute, and covers a fire loss suffered by a policy holder as well as the faithful distribution to policy holders of such assessments as have been actually collected by the officers of the company.

*W. F. Coleman* and *Murphy, Coleman & Lewis,* for appellants (as *amici curiae*).

The sole condition to be inserted in the bond is prescribed by the statute itself, *i. e.* "conditioned for the prompt payment of all assessments to parties or beneficiaries entitled thereto." This condition measures the whole obligation of the principal and sureties in the bond.

After prescribing the exact form of the condition to be inserted in the bond, the statute further provides that "the makers of said bond shall be liable thereon for any violation of the conditions thereof, or any loss which may accrue to the policy holders or beneficiaries of such company." If the clause, "any loss which may accrue," etc., was intended to make the sureties on the bond liable directly for a fire loss, it widens the prescribed condition of the bond itself, and surely, if that had been the legislative purpose, it would have required this additional element to be named as one of the terms of the condition. Since, in a company of this kind, the whole body of the membership is to contribute ratably to the loss, if any, upon what theory can their sureties be made primarily liable for a debt which they themselves owe?

BLACKWOOD, Special Judge. The plaintiff in the court below brought suit in the Marion Circuit Court against the Ozark Insurance Company on a policy issued March 30, 1904, for loss of $1,000 on stock of goods, and $200 on the building, and recovered judgment for the full amount sued for. The bondsmen were not

joined in this suit, neither was there any allegation that the company had failed to promptly collect or pay over all assessments to the policy holders. The insurance company answered and appealed at the first trial, where judgment was entered against it, and afterward a new trial was granted. At the second trial there was no appearance for the defendant, and judgment was rendered against it. The policy is set out in the transcript, and is what is known as a "standard policy," but it has attached to the printed copy, in typewriting, this clause: "This being a policy issued by the Ozark Insurance Company, an organization under the laws of the State of Arkansas governing mutual insurance companies, all special regulations lawfully applicable to its organization, membership, policy or contracts of insurance shall apply to and form a part of this policy."

Plaintiff then brought suit against the bondsmen in the Sebastian Circuit Court for the amount of the loss as evidenced by the judgment against the insurance company, and obtained judgment against them for the amount of the judgment of the Marion Circuit Court. The records contain no part of the company's charter, articles of association, or bylaws. The bond sued on sets forth that the insurance company is doing the business of insurance upon a mutual or assessment plan as provided in sections 4132 and 4133 Sandels & Hill's Digest.

The bond is for $20,000, and is as follows:

"Know all men by these presents: That whereas, the Ozark Insurance Company of Ft. Smith, Arkansas, has filed its articles of association, and has in other respects conformed to the requirements of the statutes in such cases made and provided; and,

"Whereas, the said company proposes to continue in the business of insurance upon the mutual or assessment plan, as provided in section 4132 and 4133, Sandels & Hill's Digest, for the period of two years ending on the 23d day of July, 1905.

"Now, therefore, we, the Ozark Insurance Company, $20,000 as principal, and the several persons whose names are in addition subscribed as sureties, are held and firmly bound unto the State of Arkansas, for the use of the beneficiaries of the policy holders of said company, in the sum of twenty thousand ($20,000) dollars, lawful money of the United States.

"The conditions of the above obligation are set forth in

sections 4133 of Sandels & Hill's Digest, and are as follows: 'Conditioned for the prompt payment of all assessments to the parties or beneficiaries entitled thereto, and the makers of said bond shall be liable thereon for any violations of the conditions thereof, or any loss which may accrue to the policy holders or beneficiaries of such company.'

"When said Ozark Insurance Company has complied with all the requirements of this bond, then this instrument shall become null and void, otherwise to remain in full force and effect.

"Witness our hands and seals this 22d day of July, 1903.

> "Ozark Insurance Company
> "By E. H. Stevenson, President,
> "James B. Moore, Secretary."

The appellants urged as grounds for reversal: First, that the bond is a fidelity bond, and by it the sureties are only bound to see that the insurance company pays over all assessments to the parties or beneficiaries entitled thereto; second, that the court erred in admitting the judgment of the Marion Circuit Court as conclusive evidence against the bondsmen; third, that the lower court erred in refusing appellants permission to introduce evidence to show that the assessments collected had been promptly paid over according to the bylaws of the insurance company.

The appellees urged for an affirmance of the judgment that it was obligatory upon the insurance company and the bondsmen to pay the loss absolutely, under the policy, and to sustain their contention rely upon this clause of the bond: "And the makers of said bond shall be liable thereon for any violations of the conditions thereof, or any loss which may accrue to the policy holders or beneficiaries of such company."

What then is a true construction to be given to this bond? The liability of the insurance company is fixed by the policy of insurance without regard to the character of the insurance company to be made liable. *Block* v. *Valley Mutual Insurance Association*, 52 Ark. 201. But the liability of the sureties on the bond is fixed by the bond itself.

Our statute does not undertake to define a mutual insurance company, and neither the articles of incorporation nor the bylaws are in evidence. We are left to our general knowledge of this class of insurance. But the court will take judicial cog-

nizance of the fact that there is a class of insurance prevailing in the State of companies having no capital stock, composed of members equally interested, writing policies of insurance and paying their losses by assessments levied and collected from the members.

Section 4133 of Sandels & Hill's Digest expressly provides that the insurance laws of this State shall be so construed as not to apply in their operation and requirements to any mutual aid societies or organizations for the relief of members thereof, by reason of loss by fire or otherwise which is not based upon a subscribed or paid-up capital in whole or in part, but alone upon membership dues and *pro rata* assessments upon its members.

Section 4124 provides that all life, fire and accident insurance companies shall annually give bond with three good and sufficient sureties, "conditioned for the prompt payment of all claims arising and accruing to any person during the term of said bond by virtue of any policy issued by any such company, etc."

But section 4133 provides that all mutual insurance companies shall give a bond, "conditioned for the prompt payment of all assessments to the parties or beneficiaries entitled thereto." This is the only condition of this bond. The plan and scheme of insurance is one based on mutual benefits and assessments. If there was no bond, the policy holders, by this system, would have to rely entirely upon assessments levied and collected from the members. The bond simply guaranties this system or scheme, and it is given for the sole purpose of seeing that the assessments when collected are promptly paid over to the parties or beneficiaries entitled thereto. It never was the intention of the statute to require a bond to assure to the policy holder a more beneficial contract than the one made under the law of mutual insurance companies. It would be an anomaly to say that the contract of the surety was greater than that of his principal. When the assessments are collected and promptly paid over, the obligation of the surety is at an end.

We do not think that the latter clause "for any violation of the conditions thereof or any loss which may accrue to the policy holders or beneficiaries of such company," is necessarily in conflict with the former, nor does it broaden the liability of the bonds-

men. ‚In the construction of statutes, such construction should be adopted as will avoid an apparent conflict and at the same time give full effect to every word, clause and provision of the enactment. In *Wilson* v. *Biscoe,* 11 Ark. 47, the court says:

"A statute is to be construed so that it may have a reasonable effect, agreeably to the intention of the Legislature. It ought to be construed, if possible, so that no clause, sentence or word shall be void, superfluous, or insignificant. But, if from a view of the whole act the intent is different from the literal import of its terms, then the intent should prevail."

The word "loss" as used in the latter part of this statute is not necessarily used as in a technical sense, as in a fire loss, but means such a loss as would accrue to the policy holders if the assessments of benefits were not promptly paid over to the beneficiary.· To hold otherwise would be to disregard the distinction which the statute makes between ordinary or old line insurance and mutual insurance companies. It would also disregard the distinction made in the two classes of bonds. To adopt the contention of the appellees would be to give a forced construction to the statute, contrary to its reason, intention and purposes.

As a general rule, a judgment against an insurance company, if no fraud or collusion is shown, is evidence against the surety in a bond executed by the company for the benefit of the policy holders. But the suit against the company can not be based upon an issue as to liability not covered by the obligation of the bond itself.

C. J. Shaw in *Lowell* v. *Parker,* 10 Metc. 309, says: "When one is responsible, by force of law or by contract, for the faithful performance of the duty of another, a judgment against that other for the failure of performance of such duty, if not conclusive, is *prima facie* evidence in a suit against the party so responsible for that other. If it can be made to appear that such judgment was obtained by fraud or collusion, it will be wholly set aside. But otherwise it is *prima facie* evidence, to stand until impeached or controlled, in whole or in part, by countervailing proofs."

We think this rule has been generally approved by the text books and adjudged cases. See *Union Guar. & Tr. Co. v. Robinson,* 79 Fed. p. 420; *Stephens* v. *Shafer,* 48 Wis. 54; *Beauchaine*

v. *McKinnon,* 55 Minn. 320; *Norris* v. *Mersereau,* 74 Mich. 687; *Bridgeport Ins. Co.* v. *Wilson,* 34 N. Y. 275; *State for use, etc.* v. *Colerick,* 3 Ohio, 487; *Robinson* v. *Baskins,* 53 Ark. 333; Baylies on Sureties and Guarantors, 143; 1 Herman on Estoppel and Res Adjudicata, 173; 2 Vanfleet, Former Adjudication, 913.

If the allegation of the complaint in the Marion Circuit Court had been that the company had not promptly paid over the assessments, the judgment against the company, in the absence of testimony showing fraud or collusion, would have been binding upon the sureties upon the issue made. The case in the 79 Fed. Rep. p. 420 (*Union Guaranty & Trust Co.* v. *Robinson*), relied upon by appellee's counsel, was upon a bond conditioned "to pay all claims arising and accruing to any person by virtue of any policy issued by the company," and was different from the bond in this case.

We are therefore of the opinion that the case should be reversed with directions that the plaintiff be permitted to amend its complaint, if it can, so as to allege that the assessments made, if any, were not promptly paid over for the benefit of this policy; and to allow defendants to introduce proof upon this issue, notwithstanding the judgment of the Marion Circuit Court.

Mr. Justice BATTLE and Mr. Justice FRAUENTHAL dissent.